[Cite as *Middleburg Hts. v. Wojciechowski*, 2015-Ohio-3879.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102216

---

## CITY OF MIDDLEBURG HEIGHTS

### PLAINTIFF-APPELLEE

vs.

## RICHARD WOJCIECHOWSKI

### DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Berea Municipal Court
Case No. 13 TRC 01789-1

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 24, 2015

**ATTORNEY FOR APPELLANT**

Christine A. Russo
11005 Pearl Road, Suite 4
Strongsville, Ohio 44136


**ATTORNEY FOR APPELLEE**

Peter H. Hull
Middleburg Heights Prosecutor
Middleburg Heights City Hall
15700 E. Bagley Road
Middleburg Heights, Ohio 44130

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Richard Wojciechowski ("Wojciechowski"), appeals his OVI convictions and assigns the following errors for our review:

1. The trial court erred in failing to grant appellant's motion to suppress because the officer stopped and detained the appellant without reasonable suspicion of a traffic violation or criminal activity, and failed to suppress the evidence obtained thereafter.

2. The trial court erred in failing to suppress the evidence based upon an illegal arrest, search, and seizure of appellant.

3. The trial court erred in failing to suppress appellant's statements, as he was not properly advised of his *Miranda* rights.

4. The trial court erred in admitting the appellant's breath test, when the officer who administered the test was not present to fully testify, and it was not fully authenticated.

5. Counsel for appellee erred in failing to admit the current version of the National Highway Traffic Safety Administration ("NHTSA") Manual.

6. The trial court erred in failing to suppress the results of the blood alcohol test over the objection of appellant, reasoning that the defense failed to raise an issue to the machine itself.

7. The trial court erred in applying the proper case law and facts in his finding of fact and conclusions of law.

{¶2} We find merit to the appeal and reverse the trial court's judgment.

## I. Facts and Procedural History

{¶3} Wojciechowski was charged with operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), having a prohibited blood alcohol content in violation of R.C. 4511.19(A)(1)(d), and weaving in violation of R.C. 4511.33(A). Wojciechowski filed a motion to suppress evidence of the field sobriety tests, the results of a breath test, and any statements he made to police after he was stopped. Wojciechowski argued that the officer who stopped him lacked the necessary reasonable suspicion and probable cause to effect a legal traffic stop.

{¶4} At the suppression hearing, Officer Ryan Nagy ("Nagy"), of the Middleburg Heights Police Department, testified that as he was driving northbound on Pearl Road, he observed Wojciechowski's truck traveling in the same northbound direction. After following Wojciechowski's truck for some distance, Nagy observed the truck weaving and set his dash camera to record its movements. Nagy explained that the dash camera is constantly recording but does not maintain more than three minutes of the video at a time unless an officer presses the "record" button. When an officer presses the record button, the camera captures and preserves the previous three minutes of film and continues recording until the officer stops it.

{¶5} The video, which was played at the suppression hearing and is part of the record, begins as Nagy turns onto Pearl Road from a parking lot near Webster Road. On cross-examination, Nagy testified that Wojciechowski did

not commit any traffic violations until he approached and crossed Bagley Road. (Tr. 28 - 30.) Nagy followed the truck as he ran the license plates and stopped Wojciechowski shortly after he made a proper left hand turn onto West 130th Street. (Tr. 32-33.) Nagy testified that because Wojciechowski failed all the field sobriety tests administered during the stop, he arrested him. Wojciechowski admitted he had consumed seven beers, and a blood alcohol test indicated that Wojciechowski's blood alcohol content was over the legal limit. (Tr. 17-18, 21.)

{¶6} The court, relying solely on Nagy's testimony, denied the motion to suppress. Wojciechowski subsequently pleaded no contest to all the charges and now appeals the trial court's ruling on his motion to suppress.

## II. Law and Argument

{¶7} In the first assignment of error, Wojciechowski argues the trial court erred in denying his motion to suppress evidence. He contends officer Nagy lacked the reasonable suspicion required for a lawful traffic stop.

{¶8} Appellate review of a motion to suppress involves a mixed question of law and fact. "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by

competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶9} An appellant may challenge a trial court's ruling on a motion to suppress by (1) challenging the court's findings of fact, or (2) arguing that the trial court failed to correctly apply the law to the facts. Where the appellant challenges the court's factual findings, as in the instant case, the appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *State v. Harris*, 5th Dist. Perry No. 14-CA-00032, 2015-Ohio-2480, ¶ 10. In other words, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).

{¶10} The Fourth Amendment of the U.S. Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords Ohioans the same protections against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d762 (1997).

**{¶11}** A traffic stop constitutes a seizure and implicates Fourth Amendment protections. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Nevertheless, a warrantless traffic stop is constitutionally valid if the officer making the stop has "a reasonable suspicion," based on specific and articulable facts, that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, syllabus.

**{¶12}** Reasonable suspicion for a "*Terry* stop" requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry* at 27. The propriety of an investigative stop must be viewed in light of the totality of the circumstances "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶13}** The Ohio Supreme Court has held that a traffic stop is constitutionally valid when a law enforcement officer witnesses a motorist "drift" over lane markings, in violation of R.C. 4511.33. *Mays* at syllabus. However, the *Mays* court further held that movement within one lane is not "a per se violation giving rise to reasonable suspicion, nor does inconsequential movement within a lane give law enforcement carte blanche opportunity to make an investigatory stop." *Id.* at ¶ 20, citing *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331 (7th Dist.). In *Mays*, the court

determined that an officer had reasonable suspicion to effect a traffic stop because the officer observed the defendant's vehicle twice cross over the white fog line "by approximately one tire width." *Id.* at ¶ 2, 24.

{¶14} Nagy testified that he observed Wojciechowski cross over the fog line and enter the adjacent lane at least three times. (Tr. 10.) However, the video recording taken from Nagy's dash camera controverts his testimony. Nagy testified that he followed Wojciechowski for several blocks before he noticed any traffic violations:

> Q: Okay. So knowing that, there is not any time prior thereto, where and when did he leave his lane of travel?
>
> THE COURT: Prior to what point in time? You said, prior.
>
> [COUNSEL]: He —
>
> THE COURT: All right. So starting when you pulled onto Pearl Road, right? I think [counsel] would like you to testify the points at which you observed, not the recording necessarily, but you observed the defendant * * * going * * * out of their [sic] lane?
>
> THE WITNESS: When I was closer to Bagley Road, and heading north of Bagley is when I started to observe the violations.
>
> THE COURT: Okay.
>
> THE WITNESS: But the recorder jumped back until * * * I was turning around (inaudible.)
>
> THE COURT: And again, Officer Nagy, I appreciate what you're saying. Let's — I think the confusion is here. Let's not worry about what's on the recording.
>
> THE WITNESS: Okay.

THE COURT: Okay. Her question is, "When did you observe when the defendant was weaving over his lanes[?]" Okay?

THE WITNESS: Okay.

THE COURT: So you can just testify based on that. All right?

THE WITNESS: Okay.

THE COURT: Go ahead, [counsel].

Q: ([BY COUNSEL]) So it was around Bagley Road —

A: Correct.

\*　　\*　　\*

Q: Okay. And your definition of not maintaining a single lane of travel, is actually traveling into another lane, correct?

A: Correct.

Q: Okay. Now, you testified that the videotape was accurate of what events were depicted, correct?

A: Yes.

Q: So if we go back to Bagley Road, we're going to see that he actually left his lane and went into another lane. Is that your testimony?

A: As we traveled, yes, on Pearl Road, north of Bagley.

Q: Okay. So just — let's watch.

{¶15} Thereupon, defense counsel replayed the dash camera video in open court and on record. As the video was playing, defense counsel asked

Nagy to point out where in the video Wojciechowski crossed over the lane line and entered another lane. The following exchange ensued:

THE COURT: Start pointing out as we're going along here where you see him going over the line.   Okay?

THE WITNESS: Okay.   There.

THE COURT: This is Bagley coming up at that light?

THE WITNESS: Yes, sir.   There.

Q: ([BY COUNSEL]): He didn't cross over the line, did he?

A: Sure, he did.

Q: Okay.   So it's your testimony he actually crossed into the other lane?

A: Yes.

Q: Did we pass Bagley?

A: Yes.

(Tr. 31.)

{¶16} Nagy testified that he did not see any traffic violations until they approached Bagley Road, which is approximately half a mile from Webster Road where the film begins.   (Tr. 28, 34.)   Although Nagy set the dash camera to record after observing the violations, he explained that the camera captured and saved the prior three minutes of video that was recorded before pressing the record button.

{¶17}   As previously stated, the video was admitted into evidence and is part of the record.   We reviewed the video, in its entirety, several times and never once observed Wojciechowski's truck cross a line.   The video contradicts Nagy's testimony when he points to specific places in the video where he declares Wojciechowski crossed over the lane line, when it is clear to us that Wojciechowski never crossed a single line.

{¶18} There are a few seconds in the video where Nagy moves beside Wojciechowski's truck because he was trying to see the truck's license plate. Nagy testified that Wojciechowski also crossed a lane line at this particular location.   We are unable to verify whether Wojciechowski's truck maintained a single lane or crossed the lane line during this portion of the film because the recording does not show the lane lines.   If we had not previously observed inconsistencies between the video and Nagy's testimony, we would have deferred to the trial court's factual findings and affirmed the trial court's judgment.   However, ostensible discrepancies in the evidence compels us to find that the trial court's judgment is not supported by competent, credible evidence.

{¶19} The first assignment of error is sustained.

{¶20} Having determined that the trial court erred in failing to grant Wojciechowski's motion to suppress, the remaining assignments of error are moot.

**{¶21}** Judgment reversed. Case remanded to the trial court with instructions to grant Wojciechowski's motion to suppress.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR