[Cite as *Cleveland v. Shevchenko*, 2016-Ohio-5711.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104083

---

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## IGOR P. SHEVCHENKO

DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2014-TRC-048839

**BEFORE:** Laster Mays, J., E.A. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 8, 2016

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law

By:   Marco A. Tanudra
Assistant City Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

## I.    INTRODUCTION

{¶1}    Defendant-appellant, Igor P. Shevchenko ("Shevchenko"), appeals his conviction, after a no contest plea, for driving under the influence of alcohol or drugs pursuant to R.C. 4511.19(A)(2).  Shevchenko presents six assignments of error, most notably, Shevchenko argues that the trial court erred in denying his motion to suppress and improperly accepted his no contest plea without informing him of the effects of his plea.

{¶2}    Appellee city of Cleveland ("Cleveland") disagrees that the motion to suppress was improvidently denied. However, Cleveland concedes the trial court's error in failing to explain to Shevchenko the effect of his no contest plea in compliance with Crim.R. 11(E), and requests that the plea be vacated as infirm, and the case be remanded for a new plea hearing.

{¶3}    After a review of the record, we find that there is merit to Shevchenko's argument that the motion to suppress was improvidently denied, and reverse the trial court's judgment.

## II.    BACKGROUND AND FACTS

{¶4}    On September 17, 2014, Shevchenko was cited for: (1) driving under the influence (R.C. 4511.19(A)(1)(a)); (2) driving under the influence with test refusal within

the past 20 years (R.C. 4511.19(A)(2)(b)); (3) operating a motor vehicle without a valid license (R.C. 4510.12)); (4) failure to use turn signal during lane change (R.C. 4511.39); and (5) seat belt violation (R.C. 4513.263(B)(1)).   Shevchenko plead not guilty to the charges and subsequently filed a motion to suppress that was heard on May 28, 2015.

### A.   Motion to Suppress Hearing

**{¶5}**   Trooper Patrick Reagan of the Ohio State Highway Patrol ("Trooper Reagan") testified that he has been a state trooper since September 2012 and that his training included National Highway Traffic Safety Administration field sobriety test administration.   Trooper Reagan observed Shevchenko operating a 2003 Chevrolet S10 pickup truck in the westbound lane of Interstate 90 on September 17, 2014.   He noticed Shevchenko's truck move from the left lane to the right lane without activating a turn signal.

**{¶6}**   Trooper Reagan testified that the improper lane charge only attracted his attention, but it did not cause him to initiate a traffic stop.   Trooper Reagan continued to follow Shevchenko and, "observed him go right of center with his right tires over the hash line more than a tire width."   (Tr. 9.)   Trooper Reagan initiated the stop 10 to 15 seconds after observing the marked lanes violation, and Shevchenko immediately complied, properly signaling as he pulled over to the right berm.

**{¶7}**   At approximately 1:20 a.m.: (1) Trooper Reagan approached the truck, (2) requested that Shevchenko produce his license, insurance and registration; (3) conducted

field sobriety tests that Shevchenko assertedly failed; and (4) arrested Shevchenko after a refusal to take a breathalyzer test.

**{¶8}** Trooper Reagan's patrol vehicle was equipped with a video recording device and microphone. Shevchenko argued, and Trooper Reagan admitted, that the video, which begins approximately one minute before Shevchenko was stopped, does not depict the lane change failure to signal violation because Reagan's recording device only "back tracks one minute" upon activation of the overhead emergency lights. Reagan narrated the video during the hearing, claiming it depicts a violation:

> [Trooper Reagan]: He's going to be going right of the center with his right tires, going over the right hash line more than a tire width, and that's the violation right there.
>
> [Prosecutor]: So this movement in the lane that we're seeing, the movement within the lane that we saw, you did not cite him for?
>
> [Trooper Reagan]: No.
>
> [Prosecutor]: You cited him for the initial improper turn?
>
> [Trooper Reagan]: Yes.
>
> [Prosecutor]: That was not on the video?
>
> [Trooper Reagan]: No.
>
> [Prosecutor]: Okay. But the violation that is picked up by the recording is the right tires going over the hash?
>
> [Trooper Reagan]: Right.

(Tr. 20 and 21.)

**{¶9}** On cross-examination, Trooper Reagan stated the violation occurred at mile marker 166 yet the citation indicates marker 167. He could not explain why the lane

change violation was not on the video, though the video automatically backtracks for one minute when lights and sirens are activated. Trooper Reagan followed Shevchenko for at least one mile, and observed Shevchenko's right tires crossing the hash mark:

> [Defense Counsel]: Okay. But, you made no attempt to start [the video] after he drove at least a mile on the road, right?
>
> [Trooper Reagan]: Right. As soon as I observed the violation, I entered the traffic stop and then I turned on my overhead lights and I called in the traffic stop.
>
> [Defense Counsel]: Is the road I-90 going west, where you saw the vehicle, is the road completely straight, or is there a curve, or turn in it at all?
>
> [Trooper Reagan]: There's curves and bends on Interstate 90.

(Tr. 33 and 34.) The trial court took the matter under advisement.

{¶10} An oral ruling was issued by the trial court at a July 1, 2015 hearing. The trial court noted that, at the suppression hearing:

> We went through essentially over the course of the hearing [the] reason for stop was an improper lane change. Defendant alleged that was not a part of the video and that — called that into question.

(Tr. 2 and 3.) The trial court also determined that there was substantial compliance with the field sobriety tests and the motion to suppress was denied. A written ruling followed.

{¶11} In response to Shevchenko's motion for reconsideration of the motion to suppress, the trial court issued a written ruling. On the issue of the traffic violations, the trial court determined that the fact that the initial lane change violation is not captured by the video does not reduce the evidentiary value as it is up to the trier of fact to determine credibility. The trial court also cited this court's decision in *Strongsville v. Spoonamore,*

8th Dist. Cuyahoga No. 86948, 2006-Ohio-4884, holding that a traffic stop is lawful even if the alleged marked lanes violation is minor.

{¶12}    On December 17, 2015, Shevchenko entered a no contest plea to driving under the influence.   This appeal ensued.

## III.    ASSIGNMENTS OF ERROR

{¶13}    Appellant presents six assignments of error:

I.    Defendant was denied due process of law when the court overruled his motion to suppress.

II.    Defendant was denied due process of law when the court overruled the motion to suppress the extensive interrogation of defendant without any warnings.

III.    Defendant was denied due process of law when the court did not explain to the defendant the effect of a no-contest plea.

IV.    Defendant was denied due process of law when the court found defendant guilty on a plea of no-contest without any examination of the facts.

V.    Defendant was denied due process of law when the court proceeded to sentence defendant without advising him of right of allocution.

VI. The court erred in sentencing defendant without a determination as to the number of prior convictions.

## IV.    LAW AND ANALYSIS

### A.    Motion to Suppress

{¶14}    We begin our analysis with appellant's first assignment of error. We find that the assigned error has merit.

**{¶15}** Shevchenko asserts that his due process rights were violated by the denial of the motion to suppress:

> A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003 Ohio 5372, ¶8, 797 N.E.2d 71. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."

(Internal citations omitted.) *Id. Cleveland v. Cunningham*, 8th Dist. Cuyahoga No. 95267, 2011-Ohio-2276, ¶ 12.

**{¶16}** In addition, as we have previously acknowledged:

An appellant may challenge a trial court's ruling on a motion to suppress by (1) challenging the court's findings of fact, or (2) arguing that the trial court failed to correctly apply the law to the facts. Where the appellant challenges the court's factual findings, as in the instant case, the appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *State v. Harris*, 5th Dist. Perry No. 14-CA-00032, 2015-Ohio-2480, ¶ 10. In other words, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583 (1982).

*Middleburg Hts. v. Wojciechowski*, 8th Dist. Cuyahoga No. 102216, 2015-Ohio-3879, ¶ 9.

{¶17} The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, as well as Article I, Section 14 of the Ohio Constitution, affords protection from unreasonable searches and seizures. A traffic search is deemed to be a seizure subject to due process protection. *Wojciechowski* at ¶ 10.

{¶18} Shevchenko argues that the facts and circumstances of this case parallel those of *Wojciechowski*, where we held that the motion to suppress was improvidently denied. On May 12, 2013, Wojciechowski was cited by the Middleburg Heights police officer Ryan Nagy ("Nagy") for driving under the influence, prohibited blood alcohol content, and weaving (R.C. 4511.19(A)(1)(a), R.C. 4511.19(A)(1)(d) and 4511.33(A), respectively.) *Wojciechowski* at ¶ 3-4.

{¶19} Wojciechowski filed a motion to suppress on the ground that Nagy "lacked the reasonable suspicion required for a lawful traffic stop." *Id.* ¶ 7. We observed in that case that:

> The Ohio Supreme Court has held that a traffic stop is constitutionally valid when a law enforcement officer witnesses a motorist "drift" over lane markings, in violation of R.C. 4511.33. [*State v.] Mays"* [119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204] at syllabus. However, the *Mays* court further held that movement within one lane is not "a per se violation giving rise to reasonable suspicion, nor does inconsequential movement within a lane give law enforcement carte blanche opportunity to make an investigatory stop." *Id.* at ¶ 20, citing *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331 (7th Dist.). In *Mays*, the court determined that an officer had reasonable suspicion to effect a traffic stop because the officer observed the defendant's vehicle twice cross over the white fog line "by approximately one tire width." *Id.* at ¶ 2, 24.

*Wojciechowski* at ¶ 13.

{¶20} Officer Nagy followed the appellant for a while, but did not observe a

traffic violation until approximately one-half mile from the point where the dash-cam video begins. *Id*. at ¶ 16.

**{¶21}** This court reviewed the video several times, but did not observe the asserted violations. In sustaining the assigned error, we held:

> The video contradicts Nagy's testimony when he points to specific places in the video where he declares Wojciechowski crossed over the lane line, when it is clear to us that Wojciechowski never crossed a single line.
>
> There are a few seconds in the video where Nagy moves beside Wojciechowski's truck because he was trying to see the truck's license plate. Nagy testified that Wojciechowski also crossed a lane line at this particular location. We are unable to verify whether Wojciechowski's truck maintained a single lane or crossed the lane line during this portion of the film because the recording does not show the lane lines. If we had not previously observed inconsistencies between the video and Nagy's testimony, we would have deferred to the trial court's factual findings and affirmed the trial court's judgment. However, ostensible discrepancies in the evidence compels us to find that the trial court's judgment is not supported by competent, credible evidence.

*Id.* at ¶ 17-18.

**{¶22}** As this court did in *Wojciechowski*, this panel compared Trooper Reagan's testimony to the video. Trooper Reagan conceded that the lane change violation is not depicted in the video, stating that the lane change violation did not trigger the stop, "[I]t just caught my attention with that and that's what drew my attention to his vehicle." (Tr. 9.) The only evidence of the lane change violation is Trooper Reagan's testimony. Trooper Reagan continued to follow Shevchenko until he "observed him go right of center with his right tires over the right hash lines more than a tire width." (Tr. 9.)

{¶23} Trooper Reagan initially stated that he cited Shevchenko for "OVI and refusal with a prior conviction for the last 20 years and I believe he was also cited for marked lanes." (Tr. 15.) After a review of the citation, Trooper Reagan corrected his response. Shevchenko was cited for the undocumented lane change violation, but not for the videotaped marked lanes violation that Trooper Reagan specifically testified provided cause to initiate the stop.

{¶24} The marked lanes violation, codified at R.C. 4511.33, that Trooper Reagan states is portrayed in the video, was not charged in the citation. Our review of the video reveals Shevchenko proceeding properly on the highway, between the lane lines. Upon reaching a portion of the highway that curved to the right, the truck shifts slightly toward the right for a several seconds. Whether due to the distance, light or angle, we do not observe that Shevchenko's "right [truck] tires [crossed] over the right hash line more than a tire width."

{¶25} Based on a thorough review of the evidence, we find that "ostensible discrepancies in the evidence compel us to find that the trial court's judgment is not supported by competent, credible evidence." *Wojciechowski* at ¶18.

{¶26} Shevchenko's first assignment of error is sustained.

{¶27} In light of our determination that the motion to suppress should have been granted, the remaining assignments of error are moot.

{¶28} The trial court's judgment is reversed. The case is remanded to the trial court with instructions to grant the motion to suppress.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR