[Cite as *Toledo v. Reese*, 2018-Ohio-2981.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio/City of Toledo | Court of Appeals No. L-17-1132 |
| Appellee | Trial Court No. TRC-16-19526 |
| v. | |
| Johnny L. Reese, Sr. | **DECISION AND JUDGMENT** |
| Appellant | Decided: July 27, 2018 |

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

Eric Allen Marks, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, Johnny Reese, Sr., appeals the June 6, 2017 judgment of the

Toledo Municipal Court sentencing him for a misdemeanor conviction of operating a

vehicle under the influence of alcohol ("OVI"). For the following reasons, we affirm.

**I. Background and Facts**

{¶ 2} After a traffic stop on July 24, 2016, Reese was arrested and charged with

operating a vehicle while under the influence of alcohol in violation of R.C.

4511.19(A)(1)(a), a first-degree misdemeanor, and speeding in violation of R.C. 4511.21(A), a minor misdemeanor. On December 19, 2016, he filed a motion to suppress the evidence obtained from the stop, claiming that the arresting officer lacked reasonable suspicion to initiate a traffic stop and impermissibly prolonged the stop. On May 23, 2017, the trial court held a hearing on the motion to suppress.

{¶ 3} The only witness at the hearing was Ohio State Highway Patrol trooper Casimir Vonsacken, the arresting officer. Vonsacken testified that he was patrolling on the east side of Toledo on July 24, 2016. At approximately 2:40 a.m., while Vonsacken was stopped at the light at the intersection of Front Street and the on-ramp to northbound Interstate 280, he saw a blue pickup truck "come up, slow and kind of just roll through the red light * * *." At that point, Vonsacken decided to "follow the vehicle and see what possible driving behaviors the vehicle would display."

{¶ 4} While on the ramp, Vonsacken said that the truck did "not flow smooth through the turn and at points you could see it start to drift out almost to cross the line. But then there'd be a correction, and it wouldn't be like a gradual correction, it would be kind of a sharp correction * * *." After the truck was on the interstate, Vonsacken said that "it appeared that the vehicle kind of accelerated to above the posted speed limit * * *." The speed limit changed to 50 m.p.h. where a construction zone began, at which point Vonsacken said that he was pacing the truck at 65 m.p.h. He explained that pacing a vehicle requires him to travel at a fixed distance behind the vehicle and then check his

2.

cruiser's radar to see the speed of the cruiser. Vonsacken initiated a traffic stop shortly after the vehicle entered the construction zone.

{¶ 5} The city offered into evidence the dash cam video from Vonsacken's cruiser. Vonsacken testified that the recording system in his cruiser begins recording video and audio when he activates his lights. The system also saves video footage beginning one minute or one minute and one-half before the lights were activated.

{¶ 6} The video in Reese's case does not show the failure to yield violation that Vonsacken witnessed. Vonsacken activated his lights more than one minute or one minute and one-half after he saw Reese fail to yield at the red light, so there is no footage from when that violation occurred. According to Vonsacken, even if the system had saved the footage from that time, the violation would not appear on the video "due to the angles," i.e., because Vonsacken's cruiser was parallel to Reese's truck and the dash cam is oriented toward the front of the cruiser. Nor does the video show the truck drifting in its lane while on the on-ramp or any "sharp" corrections. Vonsacken explained this discrepancy by saying that dash cam videos "definitely aren't as clear as my vision; in addition, a one-dimensional picture versus a three-dimensional picture." The only drifting that Vonsacken identified in the video was when Reese "went left and brought it back" as he was leaving the on-ramp. Reese then appears to slightly correct back toward the center of his lane. Reese's left turn signal was on and he was preparing to merge onto the interstate at the time of the drifting. Vonsacken also testified that the dash cam video did not display the speed at which he was traveling.

3.

**{¶ 7}** Following Vonsacken's testimony and counsel's closing arguments, the trial court denied Reese's motion to suppress. It found that Vonsacken's testimony that the truck drifted in its lane of travel did not provide probable cause for the stop, but that Vonsacken had probable cause to stop Reese nonetheless because Vonsacken witnessed Reese fail to yield at the red light and drive at 65 m.p.h. in a 50 m.p.h. zone. The court noted that "the fact that the video doesn't show the red light violation that was testified to by the trooper doesn't mean it didn't happen. And the fact that the video doesn't show a speed * * * doesn't mean it didn't happen either."

**{¶ 8}** The case immediately proceeded to a bench trial. Again, Vonsacken was the city's only witness. He testified that at approximately 2:40 a.m. on July 24, 2016, while sitting at a red light, he saw a vehicle that failed to come to a complete stop at the light. He followed the vehicle onto northbound Interstate 280, where he activated his lights and initiated a traffic stop. Vonsacken said that the driver pulled off next to the concrete barrier in the center of the interstate and came to a stop, but then "rolled forward a little bit" before finally stopping. Before exiting his cruiser, Vonsacken noticed the driver of the truck "reaching around and moving in the cabin more than what I would say an average driver would do."

**{¶ 9}** When Vonsacken approached the truck, he saw that the driver—whom he identified at trial as Reese—had glassy, bloodshot eyes and he smelled the odor of an alcoholic beverage coming from inside the truck. When Vonsacken asked Reese if he had been drinking, Reese denied consuming any alcohol that night. Reese provided

4.

Vonsacken with his license, which Vonsacken confirmed was valid. He asked Reese to exit the truck. Reese eventually did so, but Vonsacken had to ask several times; Reese took a phone call, attempted to drink from a water bottle, and started to roll up his window and lock his door before getting out of the truck. Vonsacken described Reese as moving in "a slow and sluggish demeanor." He conceded that he had not met Reese before the traffic stop and that Reese might normally demonstrate a "slow demeanor." Because Reese was moving around a lot in the truck and was not responding to Vonsacken's requests as quickly as Vonsacken wanted him to, Vonsacken called for backup.

{¶ 10} Once Reese was out of the truck, Vonsacken attempted to pat him down. Vonsacken testified that Reese either did not understand his instructions or intentionally failed to follow them, and Vonsacken had to repeat things on "several occasions." Vonsacken placed Reese in the back seat of the cruiser while he waited for backup. Once they were in the cruiser, Vonsacken could smell alcohol on Reese.

{¶ 11} After the backup arrived, Vonsacken took Reese out of the cruiser and attempted to administer standardized field sobriety tests. Vonsacken administered the horizontal gaze nystagmus test and noticed six out of six clues, which indicated to Vonsacken that Reese had consumed enough alcohol to affect the muscles in his eyes. Vonsacken also asked Reese to recite the alphabet beginning at the letter C and stopping at the letter X. Reese tried twice, but stopped at the letter I both times. Vonsacken asked

5.

Reese to do the walk-and-turn test, but Reese engaged in a "debate" with Vonsacken instead of attempting the test.

{¶ 12} Because of the amount of time that they had been standing on the side of the interstate and because Vonsacken did not believe that Reese was going to attempt the field sobriety tests, he arrested Reese. The troopers at the scene searched Reese's truck after arresting him. They found a partially-empty beer bottle underneath the back seat and a partially-empty flask in the center console. Vonsacken said that Reese never admitted to consuming alcohol on the night of his arrest. Vonsacken also testified that he asked Reese to take another test after they arrived at the Lucas County jail, but he did not say what the test was.[1] Reese refused.

{¶ 13} After hearing the testimony and evidence, the trial court found Reese guilty of OVI and not guilty of speeding. It then proceeded directly to sentencing. During the sentencing, the city noted that Reese had two prior OVI charges that were reduced, but it did not object to the minimum sentence in this case. Reese and his attorney had the following exchange with the court prior to the court imposing sentence:

[DEFENSE COUNSEL]: Judge, I would just ask for the Court to impose the minimum mandatory—minimum mandatory sentence at this time, allow him to serve those three days in a driver's intervention program. As you've heard throughout the duration of this case, as well as on the

---

[1] We presume, based on Vonsacken's reference to reading to Reese a "BMV2255 form," that he asked Reese to take a chemical test to measure the concentration of alcohol in his breath, blood, or urine.

6.

video, my client is a commercial driver's license holder, was a commercial driver's license holder, gainfully employed, a minister in his church. So I would ask for the Court to impose the mandatory minimum at this time.

THE COURT: Is he engaged in any alcohol treatment?

[DEFENSE COUNSEL]: Not at this time.

THE COURT: Have you been in the past?

THE DEFENDANT: No.

THE COURT: Okay. Do you need to be?

THE DEFENDANT: No.

THE COURT: Mr. Reese, you're going to kill somebody. Somebody is going to die because you have an alcohol problem and you don't want to do anything but engage in a debate. Somebody is going to die. You do not acknowledge that there is a problem. This is the third alcohol conviction. I don't really care that the other ones were convicted of DUIs or something less. What I care about is my two children and my wife drive on the same roads you're driving around on drunk. I am not going to let you kill somebody. It's not going to happen on my watch.

THE DEFENDANT: I'm not going to kill anybody, Your Honor.

THE COURT: Yes you are. You are not taking this seriously. That is more frightening than anything. * * *.

The trial court imposed a sentence of 180 days in jail with 177 days suspended and the remaining three days to be served in a driver's intervention program; a fine of $850, which the court noted was the fine prescribed for a third OVI offense; a six-month license suspension from the date of the offense; one year of active probation with the conditions that Reese not consume alcohol and follow any recommendations resulting from a substance abuse assessment; and 100 days of electronic alcohol monitoring.

{¶ 14} Reese appeals his conviction, raising three assignments of error:

FIRST ASSIGNMENT OF ERROR[:]  THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

SECOND ASSIGNMENT OF ERROR[:]  IT CONSTITUTED PLAIN ERROR AND PROSECUTORIAL MISCONDUCT WHEN THE CITY OFFERED ITS PERSONAL OPINION IN CLOSING STATEMENTS AS TO APPELLANT'S GUILT.

THIRD ASSIGNMENT OF ERROR[:]  THE TRIAL COURT FAILED TO ADDRESS APPELLANT PERSONALLY AND ASK IF HE WISHED TO MAKE A STATEMENT OR PRESENT ANY MITIGATING INFORMATION TO THE COURT PRIOR TO SENTENCING.

8.

## II. Law and Analysis

## A. The Trial Court Properly Denied the Motion to Suppress

{¶ 15} In his first assignment of error, Reese argues that Vonsacken lacked probable cause to stop him and lacked reasonable suspicion to administer field sobriety tests. He contends that the trial court's findings of fact are against the manifest weight of the evidence because neither Reese's failure to yield at a red light nor his excessive speed are seen on the dash cam video and Vonsacken's testimony regarding both violations is not credible. He points to an alleged discrepancy between Vonsacken's testimony and the video to support his argument that we should discredit all of Vonsacken's testimony. He also argues that Vonsacken's testimony was insufficient to support a finding that Vonsacken had the reasonable, articulable suspicion necessary to administer field sobriety tests. The city counters that the trial court properly assessed Vonsacken's credibility and appropriately weighed the evidence. It also argues that Reese forfeited any error regarding the field sobriety tests because he did not object when the trial court and the city said at the suppression hearing that the only disputed issue was the constitutionality of the traffic stop.

{¶ 16} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court acts as the trier of fact at a suppression hearing by weighing the evidence and determining the credibility of the witnesses. Although we must accept any findings of fact that are supported by competent, credible evidence, we conduct a de novo review

to determine whether the facts satisfy the applicable legal standard, and this independent review is done without deference to the trial court. *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *Burnside* at ¶ 8; *State v. Jones-Bateman*, 6th Dist. Wood Nos. WD-11-074 and WD-11-075, 2013-Ohio-4739, ¶ 9.

### 1. Probable Cause Supported the Traffic Stop

{¶ 17} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures. This includes unreasonable automobile stops. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Nonetheless, a traffic stop is constitutionally reasonable when the officer making the stop has probable cause to believe that a traffic violation has occurred. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 11; *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus. "Probable cause exists when there are facts and circumstances within the police officer's knowledge that are sufficient to warrant a reasonable belief that the suspect is committing or has committed an offense." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 26, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶ 18} Reese's argument that the stop was unconstitutional rests entirely on Vonsacken's credibility. He claims that the trial court should have discounted all of Vonsacken's testimony because the video contradicts his testimony that Reese was drifting in his lane of travel and making "sharp corrections." Because the video shows a

10.

discrepancy, Reese argues, all of Vonsacken's testimony—including his testimony that he witnessed two traffic violations that do not appear on the video—is unreliable. To support his position, he cites to *City of Middleburg Heights v. Wojciechowski*, 8th Dist. Cuyahoga No. 102216, 2015-Ohio-3879, and *City of Cleveland v. Shevchenko*, 8th Dist. Cuyahoga No. 104083, 2016-Ohio-5711. These cases are distinguishable.

**{¶ 19}** In both cases, the Eighth District Court of Appeals reversed the trial court's denial of a motion to suppress because the arresting officer's testimony was inconsistent with the video offered into evidence. In *Wojciechowski*, the officer testified that the defendant committed several marked lanes violations and pointed to the places in the video where the defendant allegedly crossed a lane line. The Eighth District concluded after reviewing the video that "[t]he video contradicts [the officer's] testimony when he points to specific places in the video where he declares Wojciechowski crossed over the lane line, when it is clear to us that Wojciechowski never crossed a single line." *Wojciechowski* at ¶ 17. The officer also testified to a marked lanes violation that was not captured on the video because the officer was beside the defendant's truck at the time. The appellate court found that the unrecorded violation could not support the trial court's determination of probable cause because of issues with the officer's credibility:

> If we had not previously observed inconsistencies between the video and [the officer's] testimony, we would have deferred to the trial court's factual findings and affirmed the trial court's judgment. However, ostensible discrepancies in the evidence compels [sic] us to find that the

trial court's judgment is not supported by competent, credible evidence. *Id.* at ¶ 18.

**{¶ 20}** Similarly, in *Shevchenko*, the Eighth District found that the officer's testimony that the defendant's vehicle crossed a lane line was contradicted by the dash cam video. *Shevchenko* at ¶ 24. It also determined that an unrecorded improper lane change that the officer testified to did not provide probable cause to stop the defendant because the officer testified that the lane change "caught [his] attention" but did not trigger the traffic stop, and the defendant was not cited with the alleged marked lanes violation that the officer claimed gave him probable cause. *Id.* at ¶ 22-23. The court, quoting *Wojciechowski*, concluded that "'ostensible discrepancies in the evidence compel us to find that the trial court's judgment is not supported by competent, credible evidence.'" *Id.* at ¶ 25.

**{¶ 21}** In this case, we do not see any "ostensible discrepancies" between Vonsacken's testimony and the video. The only possible discrepancy relates to Reese's driving while on the ramp to Interstate 280. We note that the trial court specifically found that the drifting could not be the probable cause for the traffic stop, and that Reese only cites to this testimony to question Vonsacken's credibility. Vonsacken testified that Reese was drifting in his lane and making "sharp corrections." The video shows one point where Reese "drifts" to the left side of the lane, which occurs shortly after he activates his left turn signal and prepares to merge left onto the interstate. Reese also appears to correct slightly, but the correction does not appear to be "sharp." Vonsacken

12.

explained the apparent inconsistency by saying that the camera "definitely [is not] as clear as my vision; in addition, a one-dimensional picture versus a three-dimensional picture." In our view, this minor inconsistency, when considered alongside Vonsacken's explanation, is not enough to require us or the trial court to completely discount Vonsacken's testimony. At worst, Vonsacken's characterization of the drifting and correcting is hyperbolic. The testimony neither rises to the level of inventing facts to support probable cause (as Reese seems to imply) nor undermines Vonsacken's credibility to the point that all of his testimony must be disregarded.

{¶ 22} Moreover, we disagree with the Eighth District's assessment that a traffic violation that merely "caught [the officer's] attention" cannot be the basis of probable cause for a traffic stop. *See Wojciechowski*, 8th Dist. Cuyahoga No. 102216, 2015-Ohio-3879, at ¶ 22-25. In fact, the city "does not have to charge a motorist with a traffic violation in order to use the facts of such a violation to support reasonable suspicion to initiate a traffic stop." *State v. Messick*, 5th Dist. Delaware No. 06CA090065, 2007-Ohio-1824, ¶ 15. Thus, the trial court's finding that the failure to yield violation provided probable cause for Vonsacken to stop Reese is supported by some competent, credible evidence, even though the violation was not recorded and Vonsacken did not cite Reese with failure to yield.

{¶ 23} Further, Vonsacken testified that he also based the traffic stop on Reese's excessive speed. He said that the speed limit where Reese entered the interstate was 60 m.p.h., but it dropped to 50 m.p.h. where a construction zone began. He also said that he

was pacing Reese's truck at approximately 65 m.p.h. when they entered the construction zone. Reese claims that Vonsacken's testimony does not support the trial court's findings because a speedometer reading is not included on the video. We disagree. Vonsacken testified that he was pacing the truck using his speed as measured by the radar in his cruiser and that he was traveling at approximately 65 m.p.h. when they entered the 50 m.p.h. zone. This is sufficient competent, credible evidence to support the trial court's determination, despite the video not displaying Vonsacken's speed. Because Vonsacken had probable cause to stop Reese, we find that the trial court did not err in denying the motion to suppress.

### 2. The Trial Court did not Commit Plain Error by Denying the Motion to Suppress

{¶ 24} Reese also argues that, assuming we find the initial traffic stop valid, the trial court erred in denying his motion to suppress because Vonsacken did not have the requisite reasonable suspicion that Reese was driving under the influence to justify detaining Reese for the purpose of administering field sobriety tests. The city argues that Reese forfeited this error by not raising it in the trial court and that the trial court did not commit plain error in denying the motion to suppress.

{¶ 25} We agree with the city that Reese forfeited this error. Although the prosecution has the burden of proof in suppression cases, the defendant has the burden of both demonstrating that a warrantless search or seizure occurred and adequately clarifying the grounds upon which he challenges the legality of the search or seizure. *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph two of

14.

the syllabus. Because the defendant has the burden of raising any issues that might require suppression of evidence, he also has the burden of ensuring that the prosecution and the court address the issues he raises. That is, if the prosecution and the court have an incorrect understanding of the issues and the defense is aware of their mistake, "the defense ha[s] the obligation to correct the court so that the court and the prosecution [are] put on notice of the issues to be decided." *State v. Byrne*, 2d Dist. Montgomery No. 25860, 2014-Ohio-1274, ¶ 13.

{¶ 26} Here, Reese raised the issue of reasonable suspicion to conduct field sobriety tests in his motion to suppress. At the beginning of the suppression hearing, however, the prosecutor stated that the city's "understanding is that the Motion to Suppress covers the single issue of the stop. And that is all the City is going to address is the validity of the constitutionality of the stop." Reese's attorney did not object or attempt to correct the prosecutor's statement. Vonsacken's testimony during the suppression hearing related only to his reasons for making the traffic stop; he did not address his reasons for prolonging the stop and administering field sobriety tests. During cross-examination Reese's attorney did not ask Vonsacken any questions about the length of the stop or his reasons for administering field sobriety tests. At the conclusion of the hearing, the court stated, "My understanding is I'm being called upon only to determine whether there is probable cause for the stop; correct?" The prosecutor responded, "Correct." Again, Reese's attorney did not object or attempt to correct the prosecutor's statement. Nor did Reese's attorney argue about the length of the stop or the propriety of

15.

the field sobriety tests in his closing argument. Finally, consistent with its understanding of the issue before it, the trial court ruled only that Vonsacken had probable cause to stop Reese; it did not address whether Vonsacken had reasonable suspicion to prolong the stop and administer field sobriety tests. And again, counsel did not object or attempt to correct the court's understanding.

{¶ 27} Based on Reese's failure to correct the city and the court at the hearing—despite having several opportunities to do so—we find that he abandoned his argument about the length of the traffic stop and has forfeited the issue on appeal.

{¶ 28} When an appellant forfeits an issue we review only for plain error. *State v. Reynolds*, 6th Dist. Lucas No. L-16-1080, 2018-Ohio-40, ¶ 28. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error is not present unless the outcome of the trial would have been different but for the complained of error. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 78.

{¶ 29} An officer who is conducting a valid traffic stop may prolong the stop to investigate the driver for OVI if the officer has a reasonable suspicion, based on specific and articulable facts, that the driver may be intoxicated. *State v. Graff*, 6th Dist. Lucas

16.

No. L-11-1307, 2013-Ohio-2242, ¶ 15. Indicia of intoxication include, but are not limited to: the time of day; erratic driving that the officer observed before the stop; the driver having glassy, bloodshot eyes; the odor of alcohol coming from inside the vehicle; the potency of the odor of alcohol; the driver admitting to consuming alcohol; and the driver slurring his speech. *Id.* at ¶ 16; *State v. Appelhans*, 6th Dist. Wood No. WD-10-026, 2011-Ohio-487, ¶ 19, citing *State v. Evans*, 127 Ohio App.3d 56, 63, 711 N.E.2d 761 (11th Dist.1998). We look to the totality of the circumstances to determine whether an officer's request for field sobriety tests was reasonable. *Graff* at ¶ 15.

{¶ 30} At trial, Vonsacken testified that he encountered Reese's truck around 2:40 a.m. when he witnessed Reese "roll through" a red light and speed in a construction zone. He also said that he smelled alcohol coming from the cab of the truck while Reese was in it and noticed that Reese had glassy, bloodshot eyes. This is sufficient to show that Vonsacken had a reasonable suspicion, based on specific, articulable facts, to believe that Reese was driving while intoxicated. Because Vonsacken was justified in asking Reese to perform field sobriety tests, the trial court did not commit any error—let alone plain error—by denying Reese's motion to suppress. We find, therefore, that Reese's first assignment of error is not well-taken.

**B. The Prosecutor's Statements in Closing Argument were not Prejudicial**

{¶ 31} In his second assignment of error, Reese argues that the prosecutor's reference during closing argument to the prosecutor's personal opinion about Reese's intoxication constituted prosecutorial misconduct. He objects to the prosecutor's

statements that "[Reese] approached the trooper in a way that *I would say* is unsteady on his feet" and "it *sounded to me* like an individual who had been drinking."  (Emphasis added.)  The city contends that, assuming the statements were improper, Reese does not make an affirmative showing that the trial court considered the statements in reaching its verdict, so Reese cannot show that the court erred.

{¶ 32} If a defendant fails to object to a prosecutor's comments at trial, we review the comments only for plain error.  *State v. Boaston*, 6th Dist. Lucas No. L-15-1274, 2017-Ohio-8770, ¶ 82.  Prosecutorial misconduct rises to the level of plain error only if it is clear that the defendant would not have been convicted in the absence of the improper comments.  *State v. Griffin*, 6th Dist. Lucas No. L-98-1215, 2000 Ohio App. LEXIS 5313, 5 (Nov. 17, 2000).  In a bench trial, the trial court is presumed to consider only relevant, competent evidence in reaching its decision unless the appellant makes an affirmative showing to the contrary.  *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 174, citing *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987).

{¶ 33} When an appellant alleges that the prosecutor made improper statements during closing argument, we review the argument in its entirety to determine whether the remarks were prejudicial.  *State v. Patton*, 6th Dist. Lucas No. L-12-1356, 2015-Ohio-1866, ¶ 154, citing *State v. Slagle*, 65 Ohio St.3d 597, 607, 605 N.E.2d 916 (1992), and *State v. Moritz*, 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 (1980).  Generally, where a prosecutor's "'personal opinions of guilt are predicated upon the evidence, though

18.

frowned upon, they are not deemed to be prejudicially erroneous.'" *State v. Reynolds*, 80 Ohio St.3d 670, 681, 687 N.E.2d 1358 (1998), quoting *State v. Stephens*, 24 Ohio St.2d 76, 83, 263 N.E.2d 773 (1970).

{¶ 34} Here, our review of the prosecutor's closing argument shows that his statements did not rise to the level of plain error. His statements that Reese "approached the trooper in a way that I would say is unsteady on his feet" and that "it sounded to me like an individual who had been drinking" were predicated upon Reese's speech and actions as demonstrated by the dash cam video that was admitted into evidence. Thus, "though frowned upon," these statements were not "prejudicially erroneous." *Reynolds* at 681. Moreover, even assuming that the statements were prejudicial, Reese does not make an affirmative showing to overcome the presumption that the trial court considered only competent and relevant evidence in reaching its decision, and we cannot say that Reese would have been acquitted but for the prosecutor's statements. Accordingly, Reese's second assignment of error is not well-taken.

**C. The Trial Court's Violation of Reese's Right of Allocution was Harmless**

{¶ 35} In his final assignment of error, Reese contends that the trial court erred when it did not afford him the opportunity to speak before he was sentenced. The city contends that Reese engaged in a "meaningful discussion" with the court prior to sentencing. Although we agree that the trial court erred by failing to provide Reese an opportunity to speak before he was sentenced, we find that the error was harmless.

19.

{¶ 36} Under Crim.R. 32(A)(1), at the time of sentencing, the court shall "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." A defendant has an absolute right of allocution because "[a] Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 358, 359-360, 738 N.E.2d 1208 (2000).

{¶ 37} The trial court has an affirmative duty under Crim.R. 32(A)(1) to directly, personally, and clearly ask the defendant if he wishes to exercise his right of allocution. *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000); *Green* at 359, quoting *Green v. United States*, 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) ("'Trial judges before sentencing should * * * unambiguously address themselves to the defendant. * * * Judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.'"); *State v. Harvey*, 3d Dist. Allen No. 1-09-48, 2010-Ohio-1627, ¶ 15 ("The requirement of allocution is considered fulfilled when the conduct of the court clearly indicates to the defendant that he has a right to make a statement prior to the imposition of sentence.").

{¶ 38} A trial court's failure to comply with Crim.R. 32(A)(1) is not always a prejudicial error, however; remand for resentencing is not required if the error is invited or harmless. *Campbell* at 326. Invited error is an error that a party invited or induced the

20.

court to make.  *Davis v. Wolfe*, 92 Ohio St.3d 549, 552, 751 N.E.2d 1051 (2001).  There is no evidence that Reese or his counsel invited the error in this case.

{¶ 39} Harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *."  Crim.R. 52(A).  Although there are no bright-line rules for determining whether a violation of Crim.R. 32(A)(1) is harmless, some Ohio courts—including this one—have found harmless error when counsel speaks, even if the defendant is not given the opportunity to do so, and the defendant receives a minimal sentence or a statutorily-mandated sentence.  *See, e.g., State v. Everson*, 6th Dist. Lucas No. L-17-1138, 2018-Ohio-323 (defendant's attorney spoke and the judge imposed a "fairly lenient" sentence); *State v. Carr*, 2d Dist. Montgomery No. 24438, 2012-Ohio-1850 (at resentencing, defendant's attorney spoke and the judge was statutorily required to impose postrelease control); *State v. Woods*, 8th Dist. Cuyahoga No. 96487, 2011-Ohio-5825 (at resentencing, defendant appeared before judge who originally sentenced him and heard his original allocution and postrelease control was statutorily required); *State v. Reed*, 10th Dist. Franklin No. 09AP-1164, 2010-Ohio-5819 (defendant received the minimum sentence with no fine or costs and the court imposed mandatory postrelease control, so "[a]ny allocution by appellant could have had no positive effect on the results of the proceeding."); *State v. Bailey*, 6th Dist. Ottawa No. OT-97-046, 1998 Ohio App. LEXIS 4239 (Sept. 11, 1998) (counsel spoke at length on defendant's behalf and the court had a presentence investigation report that outlined mitigating factors); *compare, e.g., State v. Mehanny*, 6th Dist. Lucas No. L-15-1141, 2016-Ohio-2867 (error was

21.

prejudicial when neither defendant nor his counsel was offered the opportunity to speak before the court imposed the sentence); *State v. Jackson*, 1st Dist. Hamilton No. C-140384, 2015-Ohio-2171 (error was prejudicial when the court denied defendant's two requests to speak at sentencing, counsel was not allowed to speak, and defendant received the maximum sentence). Essentially, the less likely it is that the defendant's allocution would have affected the outcome of the case, the more likely the courts are to find that a Crim.R. 32(A)(1) violation was harmless.

{¶ 40} During Reese's sentencing hearing, the trial court did not ask Reese if he wanted to make a statement before it imposed sentence. The only dialogue between Reese and the judge was Reese responding to the court's questions about alcohol treatment and its accusation that Reese was "going to kill somebody." This does not constitute a direct and personal inquiry of Reese as required by Crim.R. 32(A)(1), but we nonetheless find that the trial court's error was harmless.

{¶ 41} Although the trial court did not inquire of Reese, it permitted his attorney to speak. Counsel explained the mitigating facts that the court should consider before sentencing Reese, including Reese holding a commercial driver's license, being gainfully employed, and being a minister in his church.

{¶ 42} Further, the court gave Reese a fairly lenient sentence. The maximum sentence for a first-degree misdemeanor violation of R.C. 4511.19(A) is 180 days incarceration, of which three consecutive days are mandatory; a $1,075 fine; and a 3-year license suspension. Although the trial court sentenced Reese to the maximum jail term, it

22.

suspended all but the mandatory three days, which it ordered Reese to serve in a driver's intervention program. The court also imposed a fine of $850 and a 6-month license suspension that began the date of the offense and expired prior to Reese's sentencing. Based on these facts, we conclude that the trial court's failure to allow Reese the opportunity for allocution did not prejudice him. Accordingly, his third assignment of error is not well-taken.

### III. Conclusion

{¶ 43} Based on the foregoing, the June 6, 2017 judgment of the Toledo Municipal Court is affirmed. Reese is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.             _____
                                            JUDGE
James D. Jensen, J.           

Christine E. Mayle, P.J.          _____
CONCUR.                                             JUDGE

_____
                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.