[Cite as *State v. Rosas*, 2025-Ohio-5022.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                     Court of Appeals No.    L-24-1242

    Appellee                                              Trial Court No.  CRB-24-06682

v.

Natalie Rosas                                        **DECISION AND JUDGMENT**

    Appellant                                            Decided: November 4, 2025

* * * * *

Rebecca Facey, Toledo Prosecuting Attorney, and
Jimmie L. Jones, Assistant Prosecuting Attorney, for appellee.

Anthony J. Richardson, II, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Natalie Rosas, appeals the November 6, 2024 decision of the

Toledo Municipal Court sentencing her for a violation of R.C. 955.22(C).  For the

following reasons, we affirm in part and reverse in part.

**I. Background and Facts**

{¶ 2} On July 25, 2024, Rosas was charged by complaint with failure to contain a

dog acting viciously in violation of R.C. 955.22(C), a first-degree misdemeanor.

According to the complaint, "[Rosas's] dog got loose out of her front door and severely

bit the pizza delivery guy. The dog has been previously declared vicious by [Lucas County Canine Care and Control] from a previous vicious bite."

{¶ 3} At a pretrial hearing, Rosas's attorney noted that she had been prepared to plead to the charge until she learned that the city wanted to euthanize her dog, Maximus. Because of that, her attorney said that she "would like a hearing on this matter" and asked for a trial at the earliest possible date.

{¶ 4} At the next court date, Rosas withdrew her not-guilty plea and entered a no-contest plea. Rosas's attorney "consent[ed] to a finding[,]" agreed that there was a factual basis to find Rosas guilty, waived presentation of evidence, and agreed that the evidence would be sufficient to support a guilty finding.

{¶ 5} Before accepting her plea, the court told Rosas, "[t]his is a misdemeanor of the first degree, punishable up to six months in jail and up to $1,000 fine. No contest plea is not an admission of guilt, but you're allowing the Court to accept as true the facts contained in the complaint. Usually that results in a finding of guilt. Do you understand?" Rosas responded, "Yes." Based on that colloquy, the trial court accepted Rosas's plea and found her guilty.

{¶ 6} Regarding Rosas's sentence, her attorney first addressed the issue of euthanizing the dog. He noted that Maximus was a 7-year-old pit bull mix with no prior incidents except a case that was dismissed "because those allegations arose during a trespassing incident." He also said that Rosas took full responsibility for the biting incident in this case and apologized to the victim. She was prepared to demonstrate that she had the necessary license, insurance, fence, muzzle, vaccinations, and training

2.

courses for the dog if it were released. He described Maximus as a "beloved family pet," "very protective of" Rosas's mother who lived in her home, a "cared-for animal" that was not abused or neglected, and "[b]y all accounts . . . a good dog." Counsel concluded by asking the court "to fashion a sentence primarily that involves not euthanizing the dog."

{¶ 7} When the city addressed the court, it argued that Maximus should be euthanized, in part because Rosas was an irresponsible dog owner. In 2008, Rosas was charged with two felony counts of confinement or restraint of a dog involving a different dog. In this case, Maximus bolted out of Rosas's house after the victim delivered a pizza to the residence. The dog bite caused the victim to miss two and one-half to three weeks of work, got infected, and was still causing the victim to suffer. The city also explained that the dog had bitten another person in October 2023, but that criminal case was dismissed because "[d]og inside home when alleged victim trespassed inside home."

{¶ 8} The victim in this case told the court that he was delivering pizza, "walking away completely unprovoked[,]" when the dog "bolted out the door and locked on [his] leg." He said that "[t]here was a lot of suffering in that . . . ."

{¶ 9} Officer Mahoney, a representative of Lucas County Canine Care and Control, told the court that she investigated the October 2023 bite involving Maximus. According to the victim in that case, when she went to the front door of the house, Maximus came out and attacked her. The police report said that a brown pit bull went through the screen door and attacked the victim on the porch. She had a bite on her face and arm, and had an ear torn off. Mahoney was sick the day of Rosas's court appearance and learned the next day that the case had been dismissed.

3.

{¶ 10} Following the October 2023 bite, LCCCC designated Maximus a vicious dog. LCCCC told Rosas in February 2024 that she needed to obtain her dangerous dog license, but she did not do so until Mahoney filed a citation for noncompliance in June 2024. Mahoney was "very concerned" to hear that someone was watching small children at Rosas's house because she thought the dog might kill someone if it got out.

{¶ 11} After Mahoney spoke, the trial court asked Rosas several questions. First, it asked if she had any other dogs at her house. She said that she had one other dog that was a smaller pit bull. Regarding the October 2023 bite, Rosas explained that her doors' orientation made it impossible for Maximus to have run out of her doors unless the victim opened the doors. She also told the court that Maximus had not gone to any type of training or aggression school.

{¶ 12} After hearing from the attorneys, victim, and LCCCC officer—but not Rosas—the trial court said,

> really at the end of the day, no matter what happens to the dog Maximus, it still doesn't necessarily address the underlying root issue. And that's bad dog ownership. And that's what this is. You did a horrible job raising Max. A terrible job. Again, the stuff that Max had done in these instances is something no dog should do. As soon as Max was born and a puppy and given to you you should have taken him to classes then. Get him acclimated with people; get him acclimated with other dogs. As he gets older you should be playing with him every day, taking him out for walks, make sure that he's used to other people and used to other pets. Taking him to other classes, doing the things that a good responsible pet owner should be doing. You clearly did none of this.

At this point, counsel explained that Rosas did socialize Maximus and take him for walks, to which the court responded,

4.

I don't believe you.  I don't believe you for a second.  I don't believe you for a second, because if I you did do the things that you were supposed to do, this would have never happened.  I'd bet my life on it.

Anything else to add?

{¶ 13} In response to the court's question, the prosecutor and Mahoney provided the court with some additional information.

{¶ 14} Before imposing sentence, the court said that "[t]his is one of the hardest decisions I've ever had to make as a judge[,]" but it "can't ignore the history of this defendant."  It was convinced that "not only should this one not have ever happened, which led to a dog bite, . . . this is not a normal thing for a dog to do.  On top of that, these two incidences aren't even the only failure to confine dog in your history. . . .  But all this great and wonderful stuff that you were planning on doing with Max, you should have done this years ago."  The court sentenced Rosas to 180 days in jail, all suspended, placed her on one year of inactive probation, and ordered that LCCCC euthanize the dog.

{¶ 15} Rosas now appeals, raising six assignments of error.

(1) APPELLANT'S COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO REQUEST AN EVIDENTIARY HEARING.

(2) THE TRIAL COURT ERRED WHEN IT FAILED TO OFFER APPELLANT AN OPPORTUNITY FOR ALLOCUTION.

(3) THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO RELITIGATE AN ISSUE FROM THE 2023 DOG BITE CASE AT APPELLANT'S SENTENCING FOR THE 2024 DOG BITE CASE.

(4) THE TRIAL COURT ERRED WHEN IT VIOLATED APPELLANT'S DOUBLE JEOPARDY RIGHTS BECAUSE IT ISSUED MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE.

5.

(5) THE TRIAL COURT ERRED WHEN IT FAILED TO OFFER APPELLANT THE COLLOQUY REQUIRED BEFORE ACCEPTING HER PLEA[.]

(6) REVERSAL IS PROPER WHERE APPELLANT DID NOT MAKE A KNOWING, INTELLIGENT, AND VOLUNTARY PLEA.

## II. Law and Analysis

### A. The trial court's imperfect compliance with Crim.R. 11 did not prejudice Rosas.

{¶ 16} In her fifth and sixth assignments of error, Rosas argues that the trial court failed to comply with Crim.R. 11(E) and she did not enter her plea knowingly, voluntarily, and intelligently because the court did not inform her of the effect of her no-contest plea. She also contends that the trial court should have informed her of the constitutional rights she was giving up before accepting her misdemeanor plea.

{¶ 17} The city responds that the trial court informed Rosas of the effect of her plea, which made her plea knowing, voluntary, and intelligent.

{¶ 18} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). When an appellant argues on appeal that her plea was not knowing, voluntary, and intelligent and seeks to vacate her plea because of the trial court's failure to comply with Crim.R. 11, "the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *State v. Dangler*, 2020-Ohio-2765, ¶ 17. Unless the trial court

6.

completely fails to comply with a portion of Crim.R. 11(C)—e.g., by failing to mention mandatory postrelease control, *State v. Sarkozy*, 2008-Ohio-509, ¶ 22—the appellant is required to show prejudice to have her plea vacated. *Dangler* at ¶ 13-16.

{¶ 19} In this case, the offense Rosas was charged with was a first-degree misdemeanor punishable by a maximum of 180 days confinement. Thus, it was a petty offense. *See* Crim.R. 2(D), (E). Before a trial court may accept a plea of no contest to a petty offense, it must comply with the provisions of Crim.R. 11(E). Under that rule, "[i]n misdemeanor cases involving petty offenses, the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty." *Id.* "In accepting a plea to a misdemeanor involving a petty offense, a trial court is required to inform the defendant *only* of the effect of the specific plea being entered." (Emphasis added.) *State v. Jones*, 2007-Ohio-6093, paragraph one of the syllabus. "To satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)." *Id.* at paragraph two of the syllabus. Crim.R. 11(B)(2) explains that "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."

{¶ 20} Here, the court told Rosas that a "[n]o contest plea is not an admission of guilt, but you're allowing the Court to accept as true the facts contained in the complaint. Usually that results in a finding of guilt." The court's explanation is missing the part of

7.

Crim.R. 11(B)(2) that explains that a no-contest plea cannot be used against Rosas in a future civil or criminal proceeding, so the court did not fully comply with Crim.R. 11(E). This is not a type of failure that excuses Rosas from showing prejudice to have her plea vacated. *Dangler* at ¶ 13-16. Thus, Rosas must show that the trial court's failure prejudiced her to have her conviction reversed. *Jones* at ¶ 52, citing *State v. Griggs*, 2004-Ohio-4415, ¶ 12. The fact that a no-contest plea cannot be used in future legal proceedings is beneficial to a defendant, so it cannot be used to show prejudice. *State v. Krauzer*, 2020-Ohio-608, ¶ 15 (6th Dist.), citing *State v. Pettaway*, 2014-Ohio-3513, ¶ 9 (6th Dist.). And Rosas does not argue that she would not have entered her no-contest plea if she had known that her plea could not be used against her in future legal proceedings. Therefore, Rosas cannot show that the trial court's failure to fully comply with Crim.R. 11(B)(2) and (E) prejudiced her.

{¶ 21} Finally, Rosas argues that the trial court was required to advise her of the constitutional rights she was waiving by entering a plea, relying upon *State v. Nunley*, 2023-Ohio-4577, ¶ 9 (6th Dist.) ("[t]he trial court's complete lack of colloquy advising [Nunley] of the loss of certain constitutional rights renders his plea invalid."). *Nunley*, however, was a concession-of-error case that mistakenly cited *State v. Clark*, 2008-Ohio-3748—a case involving a felony plea—for this proposition. As the Ohio Supreme Court made clear in *Jones*, "[i]n accepting a plea to a misdemeanor involving a petty offense, a trial court is required to inform the defendant *only* of the effect of the specific plea being entered." (Emphasis added.) *Id.* at paragraph one of the syllabus. Thus, the trial court

8.

was not required to address constitutional rights before accepting Rosas's plea in this case.

{¶ 22} Rosas's fifth and sixth assignments of error are not well-taken.

### B. Rosas received effective assistance of counsel.

{¶ 23} In her first assignment of error, Rosas argues that her trial counsel was ineffective because he failed to file a motion for an evidentiary hearing on whether to euthanize Maximus. She contends that the outcome of the case would have been different if she had been able to present evidence showing that the 2023 dog bite was not relevant to this case. The city responds that counsel did request a hearing at a pretrial and "Trial Counsel cannot be ineffective for failing to do something that Trial Counsel did do."

{¶ 24} To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); and *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A reasonable probability is one sufficient to undermine confidence in the outcome. *State v. Sanders*, 94 Ohio St.3d 150, 151 (2002). Failure to present sufficient evidence on either prong is fatal to an ineffective-assistance claim. *State v. Leasure*, 2023-Ohio-2710, ¶ 40 (6th Dist.), citing *Strickland* at 697.

9.

{¶ 25} To prevail on an ineffective-assistance claim, the defendant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *Strickland* at 686. Properly licensed Ohio lawyers are presumed to be competent, and there are "countless" ways for an attorney to provide effective assistance in a case. *State v. Gondor*, 2006-Ohio-6679, ¶ 62; *Bradley* at 142. Thus, "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Bradley* at 142, quoting *Strickland* at 689. "[E]ffective assistance of counsel does not equate with a winning defense strategy . . . ." *State v. Strickland*, 2003-Ohio-491, ¶ 16 (6th Dist.).

{¶ 26} Counsel is "strongly presumed" to have rendered adequate assistance and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *State v. Smith*, 17 Ohio St.3d 98, 100 (1985), quoting *Strickland* at 694-695. Generally, trial strategy and tactical decisions—even debatable ones—cannot form the basis of a claim of ineffective assistance of counsel. *State v. Grissom*, 2009-Ohio-2603, ¶ 22 (6th Dist.).

{¶ 27} Here, counsel's performance did not fall below an objective standard of reasonable representation. Although counsel did not file a written motion for an evidentiary hearing, he requested a hearing, he presented evidence to the court at the sentencing hearing, and he explained the circumstances of the earlier dog bite to the court. This does not constitute ineffective assistance. Rosas's first assignment of error is not well-taken.

10.

## C. The trial court's failure to allow Rosas to speak at sentencing was prejudicial.

{¶ 28} In her second assignment of error, Rosas argues that the trial court erred by failing to clearly and unambiguously ask her at the sentencing hearing if she had anything she wanted to say in mitigation, which violated Crim.R. 32(A). She contends that this prejudiced her because she was unable to articulate how she intended to be a better dog owner in the future or to "better explain the circumstances of Maximus in order to mitigate the punishment of his euthanization." The city responds that the court "engaged Appellant directly" and "asked Appellant if she wanted to state anything else and Appellant remained silent." In other words, Rosas invited the error because she "was given the opportunity for allocution, but she chose not to speak on her own behalf."

{¶ 29} Under Crim.R. 32(A)(1), at the time of sentencing, the court shall "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." A defendant has an absolute right of allocution because a "Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000).

{¶ 30} A trial court has an affirmative duty under Crim.R. 32(A)(1) to directly, personally, and clearly ask the defendant if she wishes to exercise her right of allocution. *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000); *Green* at 359, quoting *Green v. United States*, 365 U.S. 301, 305 (1961) ("'Trial judges before sentencing should . . . unambiguously address themselves to the defendant. . . . [J]udges should leave no room

for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.'" (Brackets in original.)); *State v. Harvey*, 2010-Ohio-1627, ¶ 15 (3d Dist.) ("The requirement of allocution is considered fulfilled when the conduct of the court clearly indicates to the defendant that he has a right to make a statement prior to the imposition of sentence.").

{¶ 31} A trial court's failure to comply with Crim.R. 32(A)(1) is not always a prejudicial error, however; remand for resentencing is not required if the error is invited or harmless. *Campbell* at 326. Invited error is an error that a party invited or induced the court to make. *Davis v. Wolfe*, 92 Ohio St.3d 549, 552 (2001). Contrary to the city's claims, there is no evidence that Rosas or her counsel invited the error in this case. Although the court did ask if there was "[a]nything else[,]" nothing indicates that the trial court addressed this comment to Rosas, or that Rosas had any opportunity to speak before the prosecutor jumped in to speak to the court. Considering the circumstances of the sentencing hearing, we find that Rosas did not invite the allocution error.

{¶ 32} Regarding harmless error, there are no bright-line rules for determining whether a violation of Crim.R. 32(A)(1) is harmless. *State v. Reese*, 2018-Ohio-2981, ¶ 39 (6th Dist.). However, generally speaking, the less likely it is that the defendant's allocution would have affected the outcome of the case, the more likely courts are to find that a Crim.R. 32(A)(1) violation was harmless. *Id.*

{¶ 33} At Rosas's sentencing hearing, the trial court did not ask her if she wanted to make a statement before it imposed sentence. The only dialogue between Rosas and the judge was Rosas briefly responding to the court's questions about whether she had

12.

another dog at home and her dogs' training, the court chastising Rosas for speaking to her attorney while it was speaking, and Rosas apologizing for speaking to her attorney. This does not constitute the direct and personal inquiry of Rosas that Crim.R. 32(A)(1) requires.

{¶ 34} The error in this case was not harmless, either. Although Rosas's attorney addressed the court, Rosas did not get an opportunity to directly plead her case to the sentencing judge. She clearly had things she wanted to tell the court, as evidenced by two parts of the transcript. First, Rosas attempted to supplement her attorney's comments regarding the 2023 biting incident involving Maximus. Second, in response to the court's comment to Rosas that "you don't want to listen to me, that's fine[,]" counsel explained that Rosas "was just telling [counsel] she did take [Maximus] for walks and socialize him in the neighborhood . . . ." Rosas never had the opportunity to tell the court these things for herself, which she had "an absolute right" to do. *Green*, 90 Ohio St.3d at 358.

{¶ 35} This is not a case where Rosas received a "fairly lenient" sentence or a statutorily mandated sentence, which would support a finding that the error was harmless. *See Reese* at ¶ 39. Instead, under the circumstances of this case, the court's violation of Rosas's right of allocution under Crim.R. 32(A)(1) was not harmless. Therefore, Rosas's second assignment of error is well-taken.

### D. Rosas's remaining assignments of error are moot.

{¶ 36} In her third and fourth assignments of error, Rosas takes issue with other aspects of her sentencing hearing. Because we are remanding this case for a new sentencing hearing, these assignments of error are moot.

13.

### III. Conclusion

{¶ 37} Based on the foregoing, the November 6, 2024 decision of the Toledo Municipal Court is affirmed in part, reversed in part, and remanded for resentencing. At the resentencing hearing, the trial court shall provide Rosas with the opportunity for allocution as required by Crim.R. 32(A). The parties are ordered to divide the costs of this appeal equally under App.R. 24.

Judgment affirmed, in part
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                    _____
                                                        JUDGE
Gene A. Zmuda, J.
CONCUR.
                                          _____
                                                        JUDGE

Thomas J. Osowik, J.
CONCURS, IN PART, DISSENTS
IN PART, AND WRITES
SEPARATELY.

**OSOWIK, J.**

{¶ 38} I concur in the majority's decision overruling Rosas' First, Fifth, Sixth and Seventh Assignments of Error. I respectfully dissent with the majority's decision to sustain Rosas Second Assignment of Error, and I would find that the trial court provided

14.

the necessary allocution at sentencing. I would also overrule Rosas' Third and Fourth

Assignments of Error and affirm the judgment of the trial court.

{¶ 39} The Second Assignment of Error states:

THE TRIAL COURT ERRED WHEN IT FAILED TO OFFER
APPELLANT AN OPPORTUNITY FOR ALLOCUTION[.]

{¶ 40} Rosas argues that she was not given the opportunity for allocution pursuant

to Crim.R.32(A).  I disagree.  Crim.R. 32(A) states in pertinent part:

> (A) Imposition of Sentence. Sentence shall be imposed without
> unnecessary delay. Pending sentence, the court may commit the
> defendant or continue or alter the bail. At the time of imposing
> sentence, the court shall do all of the following:
> (1) Afford counsel an opportunity to speak on behalf of the
> defendant and address the defendant personally and ask if he or
> she wishes to make a statement in his or her own behalf or
> present any information in mitigation of punishment.

{¶ 41} A Crim.R. 32 inquiry represents a defendant's last opportunity to plead his

or her  case or to express remorse to the trial court. *State v. Sears*, 2023-Ohio-1925, ¶ 18

(6th Dist.), quoting *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000). A defendant's

right of allocution is fulfilled when the court's conduct clearly shows the defendant and

his counsel each had a right to make a statement before sentence was imposed. *Id.*, citing

*Defiance v. Cannon*, 70 Ohio App.3d 821, 828 (3d Dist.1990).

{¶ 42} The purpose of allocution is to allow the defendant an opportunity to state

for the record any mitigating information which the judge may take into consideration

when determining the sentence to be imposed. *State v. Fisher*, 2020-Ohio-6829 ¶ 36 (7th

Dist.).

15.

**{¶ 43}** In this case, the trial court engaged in a conversation with Rosas personally prior to the imposition of sentencing. That colloquy focused on Rosas' care and training of the dog Maximus as well as her other dog.

COURT:           So did Max undergo any kind of training or aggressive dog school or anything of that nature after this?

DEFENDANT:    No. He - -

COURT:           This is not normal for any dog.

          The Court further inquired of Appellant:

COURT:           You said your other dog - - what's the other dog's name?

DEFENDANT:    Chica.

COURT:           Chica had gone through school?

DEFENDANT:    With Off Leash K9. I didn't have that in the documents. I didn't know if - - you can call them. I have the number.

COURT:           Well, that would be helpful………… If I decide to have Max euthanized - - you don't want to listen to me, that's fine.

DEFENDANT:    I'm sorry.

COURT:           It will make my job real easy.

DEFENDANT:    I'm sorry.

**{¶ 44}** While the trial court did not specifically ask Rosas if she wanted to make a statement in mitigation, the conduct of the court and the totality of the exchange in the sentencing transcript obviously demonstrated that both she and her counsel each had a right and opportunity to make a statement before sentencing. I find that the conversation

16.

that did occur constituted an allocution sufficient to comply with the Ohio Supreme Court's mandates and the mandates of Crim.R. 32(A)(1). *See Fisher* at ¶ 36.

{¶ 45} For the forgoing reasons, I respectfully dissent and would find the Rosas' Second Assignment of Error not well-taken.

{¶ 46} Rosas' Third Assignment of Error states:

THIRD ASSIGNED ERROR: THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO RELITIGATE AN ISSUE FROM THE 2023 DOG BITE CASE AT APPELLANT'S SENTENCING FOR THE 2024 DOG BITE CASE [.]

{¶ 47} Appellant argues that it was improper to "relitigate" the 2023 dismissed case at sentencing. She argues that the trial court "relitigated" the issue about whether the victim in that case was a trespasser. Appellant argues the doctrine of res judicata would prohibit a discussion of the dismissed case, citing *Davie v. Nationwide Ins. Co. of Am.,* 2017-Ohio-7721 ¶ 46 (8th Dist.).

{¶ 48} In the record of the trial court proceedings, there is no objection interposed to discussion of the 2023 dismissal. Certainly, no arguments were presented to the trial court concerning res judicata and issue and claim preclusion. The trial court had no opportunity to consider this argument.

{¶ 49} After the plea of no contest was accepted by the trial court, counsel brought the 2023 incident to the court's attention. He pointed out "that case was dismissed because those allegations arose during a trespassing incident." He also noted that the prosecution must have considered the injuries and the decision to dismiss "wouldn't have been entered lightly."

17.

{¶ 50} A litigant must raise error in the first instance in the trial court to permit an opportunity to avoid or correct an error.  Such objections waived if raised for the first time on appeal.  *B.W. v. D.B.-B*., 2011-Ohio-2813 (6th Dist*.).  See Koscielak v. United Ohio Ins. Co.*, 2020-Ohio-3224, ¶ 29 (3rd Dist.).  In this case, not only was there no objection raised, but counsel was also the first to provide an explanation concerning the 2023 case. Arguably, this borders on being an invited error. Appellant was actively responsible for initiating a discussion over this incident.  More specifically, by claiming that the case involved a "trespasser" counsel invited a more robust conversation into the dismissal and the circumstances of the case itself. Under the settled principle of invited error, a litigant may not take advantage of an error which he himself invited or induced. *State v. Murphy,* 2001-Ohio-112.

{¶ 51} Nevertheless, I would review and consider the argument that Rosas does make in the interest of justice. Under the doctrine of res judicata, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp*., 73 Ohio St.3d 379 (1995).

{¶ 52} The 2023 case is not part of the record of this case and there is nothing to review but the arguments and statement of the witnesses and counsel at sentencing. It is undisputed that the 2023 case was dismissed and a final judgment was never rendered upon the merits. Hence, res judicata could not apply.

{¶ 53} The Canine Officer indicated that prior to the dismissal of the charges, the court found Max to be a vicious dog. The appellant asserts that the charges were

18.

dismissed because the victim was a trespasser. However, the prosecutor and Canine Control officer took exception to that characterization and reasoning and noted that the victim was not given the opportunity to be heard prior to the dismissal. The Canine Officer further stated that the victim in the 2023 incident was a friend of the owner's mother and the same dog inflicted "three significant bites to this victim, including tearing off of an ear."

{¶ 54} In either event, that case was dismissed and was not before the trial court in this case. However, the information supplied to the trial court was relevant for purposes of sentencing. For the forgoing reasons, I would find appellant's Third Assignment of Error to be not well-taken.

{¶ 55} The Fourth Assignment of Error states:

FOURTH ASSIGNED ERROR: THE TRIAL COURT ERRED WHEN IT VIOLATED APPELLANT'S DOUBLE JEOPARDY RIGHTS BECAUSE IT ISSUED MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE

{¶ 56} Appellant argues that her Fifth and Fourteenth Amendment rights against Double Jeopardy were violated when the trial court heard statements from both the prosecutor and a representative of Lucas County Canine Control about past behavior of the dog Max. Rosas argues that the state punished her twice for both the dog's bite in 2023 and the present case. The Fifth Amendment to the United States Constitution, as well as Section 10 of Article I of the Ohio Constitution, stands for the proposition that it is unconstitutional for one to be put in jeopardy twice for the same offense. In *State v.*

19.

*Best* 42 Ohio St.2d 530 (1975, the Supreme Court of Ohio articulated the test for double jeopardy:

> "The applicable rule under the Fifth Amendment is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt a defendant from prosecution and punishment under the other." *State v. Sellers*, (8th Dist.) 2005-Ohio-6010, ¶¶ 4-5.

{¶ 57} In this case, it is painfully obvious that the 2023 case occurred in a different year and involved a different victim. It was dismissed for unknown reasons, apparently other than on the merits.

{¶ 58} Double jeopardy aims to prevent repeated prosecutions and punishments for the same offense, not to stop a sentencing court from considering a defendant's relevant history when determining an appropriate sentence for a new conviction. The dog's prior vicious behavior was clearly relevant in sentencing and to determine disposition of the animal. Therefore, the Fifth Amendment to the United States Constitution and Section 10 of Article I of the Ohio Constitution were not implicated when the court heard statements about the 2023 incident. I would also overrule appellant's Fourth Assignment of Error.

20.

{¶ 59} Based upon the foregoing, I respectfully dissent and would affirm the judgment of the trial court.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.